**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

JAMES THOMPSON,

Plaintiff,

v. CIVIL ACTION NO. 3:15-12547

CHARLIE SPEARS individually and as Owner of CS Heavy Equipment Repair Services,

Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Charlie Spears, individually and as Owner of CS Heavy Equipment Repair Services, Motion for Summary Judgment (ECF No. 29), Motion in Limine to Preclude Plaintiff from Offering Testimony Regarding Alleged Damages which are Speculative in Nature (ECF No. 38), and Motion in Limine to Preclude Plaintiff from Offering Certain Testimony and/or Witnesses during Trial. ECF No. 39. The Court heard argument on the motions at the Pretrial Conference held on October 17, 2016. Upon consideration of the parties' arguments and for the following reasons, the Court **GRANTS, in part, and DENIES, in part,** Defendant's Motion for Summary Judgment and Defendant's Motion in Limine to Preclude Plaintiff from Offering Certain Testimony and/or Witnesses during Trial, and **GRANTS** Defendant's Motion in Limine to Preclude Plaintiff from Offering Testimony Regarding Alleged Damages which are Speculative in Nature.

## I.
## FACTUAL ALLEGATIONS

In his Complaint, Plaintiff James Thompson asserts that he bought a 1984 bulldozer in February 2014, and entered into a contract with Defendant in July of 2014 to make repairs to the bulldozer. Labor costs were quoted to be $1,600, with the costs of parts not to exceed $6,000. Shortly after the bulldozer was delivered to Defendant, Defendant informed Plaintiff that additional repairs were needed, and Defendant gave Plaintiff an invoice for $8,628.94. Plaintiff paid Defendant the entire increased amount. Less than two weeks later, Defendant told Plaintiff it would cost an additional $9,529.19 for parts and labor. Again, Plaintiff immediately paid the additional cost. Three months later, on October 21, 2014, Defendant asked Plaintiff to pay another $9,779.56 for parts and labor, which Plaintiff did. In all, Plaintiff states he paid a total of $32,645.69 for labor and parts.

According to Plaintiff, Defendant told him the repairs on the bulldozer would be complete by November 2014. However, the repairs were not completed in November or December so Plaintiff filed a complaint with the Better Business Bureau. In January 2015, Plaintiff also filed a consumer complaint with the West Virginia Attorney General's Office. In February 2015, Defendant allegedly represented to an employee of the Attorney General's Office that the repairs were 50% complete and would be finished by the end of April 2015. The repairs were not completed by the end of April. Thereafter, on July 29, 2015, Defendant wrote Plaintiff a letter stating that the repairs would be complete between August 18 and August 28, 2015. Plaintiff filed this action against Defendant on August 19, 2015, alleging Fraud and Breach of Contract. Plaintiff retrieved the bulldozer from Defendant on September 8, 2015.

In defense of the above allegations by Plaintiff, Defendant asserts that once he began working on the bulldozer, he realized additional repairs were necessary because the machine was "scabbed together with incorrect parts including parts from different John Deere models—which were not designed to be interchangeable[,]" and there were other things wrong with it. *Def.'s Mem. of Law in Supp. of Def.'s Mot. for Summ. J. on Pl.'s Claims*, at 4. As he dismantled the bulldozer, even more problems were discovered, and Plaintiff agreed to pay for those repairs. Thereafter, in September of 2014, Defendant suffered a stroke and was unable to work for one month and was placed on restrictive duty when he did return to work. Defendant agrees with Plaintiff that the bulldozer was picked up on September 8, 2015, but he states the bulldozer was ready to be picked up prior to the time Plaintiff filed this action. Defendant asserts the reason it was not picked up was because he was unable to coordinate a time with Plaintiff. In addition, when Plaintiff received the bulldozer, Defendant states he told Plaintiff that additional adjustments may be necessary in a workload situation. When Defendant learned that those adjustments were needed, he made them.

## II.
## STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts

in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III.
## DISCUSSION

In his Motion for Summary Judgment, Defendant asserts Plaintiff should not be permitted to proceed on his claim for fraud because there is no evidence that Defendant has engaged in acts of fraud or made fraudulent misrepresentation. Plaintiff, however, alleges Defendant committed fraud in three respects: (1) Plaintiff states that Defendant represented that much of the delay was caused by the fact he was waiting for parts, and Defendant said in November of 2014 that he had ordered all the parts for the bulldozer when, in fact, those parts had not been ordered; (2) Plaintiff asserts that Defendant actually ordered some of the expensive parts he said he used on the bulldozer after the bulldozer was returned to Plaintiff; and (3) Plaintiff alleges that Defendant said the bulldozer would be completed in April 2015, but the bulldozer was not completed by that time and Defendant had done virtually no work on the machine, demonstrating that he never intended to complete it by that date. Although Defendant contests that these

allegations amount to fraud, and he tries to explain some of these allegations away, the Court finds they raise factual issues which are best left for trial. Therefore, the Court **DENIES** summary judgment on Plaintiff's fraud claims on these issues.

Having resolved that Plaintiff may proceed on his fraud claim as outlined above, the Court further finds Plaintiff may seek damages for aggravation, inconvenience, and annoyance resulting from any fraud. Thus, Plaintiff may testify about his aggravation, inconvenience, and annoyance, but the Court prohibits Plaintiff from placing any monetary value on these matters. The amount of money, if any, Plaintiff should be awarded for his aggravation, inconvenience, and annoyance is a determination within the province of the jury.

Next, Defendant argues for summary judgment on Plaintiff's claim for breach of contract claim based upon any representation Defendant made that the bulldozer would be "like new." Defendant argues that such statements are mere puffery, and no one would reasonably believe that the repairs could make a 1984 bulldozer "like new." Upon consideration, the Court agrees with Defendant that any comments about the bulldozer being "like new" is not a term of the contract, but mere puffery. Thus, the Court **GRANTS** Defendant's motion with respect to this claim.

The parties further disagree, however, as to the terms and scope of the contract and whether Defendant fulfilled all his obligations under the contract. Initially, the Court finds the contract was formed over a series of invoices and conversations between the parties and is clearly ambiguous. As there are genuine issues of material fact as to what the terms and scope of the

contract are, these issues should be determined by the jury. The parties may offer parole evidence in support of their respective positions, provided such evidence is otherwise admissible. Additionally, to the extent Plaintiff's breach of contract claim is based upon the nature, extent, and duration of the repairs, the Court finds that those issues also are best left for the jury to decide whether they constitute a breach of the contract. Therefore, the Court **DENIES** Defendant's motion with respect to all these issues.

Defendant further moves that Plaintiff should not be able to collect consequential damages for loss of use if he successfully proves his breach of contract claim. It is undisputed that Plaintiff intended to use the bulldozer for his personal use and not a commercial use. In addition, Plaintiff never expended any pecuniary dollar amount by renting a replacement bulldozer or hiring anyone to use a bulldozer on his property. Plaintiff responds that he has $20,000 worth of work he wants to do on his property that was delayed by Defendant's actions. He also states he took two weeks of vacation to use the bulldozer on his property, but the repairs were not complete in time for him to use it.

To support his claim as to the value of his loss of use, Plaintiff seeks to offer evidence about various quotes he received to rent a bulldozer or to hire someone to perform the work. However, Plaintiff has not identified any witness, other than himself, who will testify as to these amounts. Plaintiff is not in the business of earth moving work and has no independent knowledge or familiarity with bulldozers that would permit him to independently testify about such costs. Defendant has filed a separate Motion in Limine to Preclude such evidence as hearsay under Rule 801 of the Federal Rules of Evidence as it does not fit within any of the exceptions to

the Rule. ECF No. 38. The Court agrees with Defendant and **GRANTS** his Motion in Limine to Preclude Plaintiff from Offering Testimony Regarding Alleged Damages which are Speculative in Nature.[1] Plaintiff is precluded from testifying or offering evidence about what others would charge for renting a bulldozer or performing the work. Moreover, although Plaintiff asserts he took two weeks of vacation expecting to use the bulldozer, such consequential damages are not recoverable for a breach of contract as it could not have been reasonably anticipated by Defendant. As stated above, this evidence may be offered to show Plaintiff's aggravation, inconvenience, and annoyance under his fraud claim, but the Court agrees with Defendant that it is not a proper damage for breach of contract under the facts of this case.

If Plaintiff is successful on either his breach of contract or his fraud claims, however, Plaintiff may recover the reasonable cost of hiring Rick Gifford to test drive the bulldozer after Defendant returned the machine to Plaintiff. Defendant told Plaintiff that it may need additional adjustments when it is used under a workload. Plaintiff, who had no knowledge of bulldozers, hired Rick Gifford to test drive the bulldozer to determine if it needed adjusted. Defendant suggests that Plaintiff did not have to hire someone to test the bulldozer because he would have done it if Plaintiff asked him. However, given the long-running dispute Plaintiff had with Defendant, a jury could easily find that Plaintiff was reasonable in asking a third person to test drive the bulldozer to determine if it was in working order. If the jury finds such testing by a third person was reasonable, then it may award Plaintiff damages to compensate him for what it

[1] Plaintiff makes a cursory argument that the estimates fall within the residual exception contained in Rule 807 of the Federal Rules of Evidence. However, he completely fails to explain why he could not have made reasonable efforts to have someone qualified to offer opinions about these costs.

cost to hire Mr. Gifford, particularly as it was Defendant who told Plaintiff that it would need tested to make sure the repairs under the contract were complete. Thus, to the extent Defendant agues in his Motion for Summary Judgment that Mr. Gifford's fees are not recoverable, the Court **DENIES** that portion of the motion. In addition, although Defendant also claims the fees charged by Mr. Gifford are not reasonable, that issue also is one for the jury to determine.

In his Motion for Summary Judgment, Defendant further argues that Plaintiff should not be permitted to collect attorneys' fees. Whether or not Plaintiff will be entitled to attorneys' fees is an issue for the Court to determine after trial. Therefore, the Court **DENIES** Defendant's motion on this issue **WITHOUT PREJUDICE**.

Finally, Defendant also has filed a Motion in Limine to Preclude Plaintiff from Offering Certain Testimony and/or Witnesses during Trial. ECF No. 39. In particular, Defendant moves to exclude the testimony of Rick Gifford and Brenton Boggs. With respect to Mr. Gifford, Defendant assets Plaintiff intends to elicit expert testimony from him, but he has not designated Mr. Gifford as an expert in this case. In response, Plaintiff agrees with Defendant that he may not use Mr. Gifford as an expert witness, but he states he intends to use Mr. Gifford as a fact witness. Given that Mr. Gifford is not an expert witness, the Court **GRANTS** Defendant's motion that he may not testify as such. However, Mr. Gifford may testify as a fact witness. If, at trial, Defendant believes a specific question may elicit a response that crosses the line between being a fact witness and an expert witness, the Court will address the issue at that time.

As to Mr. Boggs, Defendant asserts that he was never disclosed as a witness having information and/or knowledge about the facts of this case. Plaintiff's counsel states that he only recently learned of Mr. Boggs and he intends to use him solely as a rebuttal witness. Counsel further asserts that, although he was not disclosed as a witness, Defendant was aware of Mr. Boggs prior to the discovery completion date. He also argues it would be manifestly unjust to prohibit him from testifying solely as a rebuttal witness. Upon consideration, the Court agrees with Plaintiff and **DENIES** Defendant's motion to preclude Mr. Boggs from testifying as a rebuttal witness.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS, in part,** and **DENIES**, in part, Defendant's Motion for Summary Judgment (ECF No. 29) and his Motion in Limine to Preclude Plaintiff from Offering Certain Testimony and/or Witnesses during Trial. ECF No. 39. The Court also **GRANTS** Defendant's Motion in Limine to Preclude Plaintiff from Offering Testimony Regarding Alleged Damages which are Speculative in Nature. ECF No. 38.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: October 26, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE